UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>v.<br><br>JOSE MATA,<br><br>　　　　　　Defendant. | Case No. 3:15-cr-00044-JO-15<br><br>ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(COMPASSIONATE RELEASE) |

Jones, J.

　　　　Defendant Jose Mata (Mata), age 33, filed this renewed motion for compassionate release based on changed circumstances. ECF No. 1082. In August 2020, I denied Mata's original compassionate release motion because he had not shown "extraordinary and compelling" medical reasons warranting release. Mata contends that his new diagnosis of a "mildly elevated left diaphragm;" a history of smoking which the Centers for Disease Control and Prevention's (CDC) recently included as a condition that puts a person at increased risk of severe illness; and the conditions at FCI Danbury, where Mata is housed, make him eligible for compassionate release. For the following reasons, I DENY the motion.

　　　　A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010).

1 Order

However, Congress has expressly authorized a district court to modify a defendant's sentence in three limited circumstances, including granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Although the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the Bureau of Prisons (BOP), Congress expanded the statute in the First Step Act of 2018. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018) (FSA). Now, a defendant may bring a motion for compassionate release, but only *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) exhausting administrative appeals after the BOP denied the defendant's petition or (b) thirty days after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

Pursuant to the FSA, a court may reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling" other than providing that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t).

The pertinent policy statement by the Sentencing Commission for sentence reductions was last amended before the FSA passed and is found in Application Note 1 to United States Sentencing Guidelines (U.S.S.G.) § 1B1.13. That policy statement explains the phrase "extraordinary and compelling reasons."[1] The policy statement also requires the court consider

---

[1] Note 1 of U.S.S.G § 1B1.13 states: **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

2 Order

whether the defendant is 'a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).' U.S.S.G. § 1B1.13(2). However, four out-of-circuit federal appellate courts have held that § 1B1.13 does not apply to a motion filed by a defendant. *United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020)(because § 1B1.13 has not been updated since the FSA expanded compassionate release to permit defense-filed motions, the policy statement is "clearly outdated"); *United State v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1110 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d

---

(A) **Medical Condition of the Defendant.**—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

1178, 1180 (7th Cir. 2020). The Ninth Circuit has not yet addressed this issue. Although the policy statement has not been updated, I conclude it still has persuasive value.

Compassionate release is "rare and extraordinary," and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at*2-3 (W.D.N.C. Mar. 16, 2020.) A defendant "bears the burden to establish both that he has satisfied the procedural requirements for judicial review and that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Holden*, 2020 WL 1673440, at *3 (D. Or. April 6, 2020). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2-3 (E.D. Cal. Feb 12, 2020); *United States v. Valdovinos*, 2020 WL 7711363, at *2 (D. Or. Dec. 29, 2020).

Mata now claims new circumstances merit a renewed look at his situation. Specifically, he argues that his new diagnosis of a "mildly elevated left diaphragm," his 20-year history of smoking, and the worsening conditions at FCI Danbury, combined with his earlier diagnoses of hypertension and obesity, now make him eligible for compassionate release. In the months following the denial of his first motion, Mata's blood pressure readings have improved. In August 2020, his blood pressure measured 151/92. ECF No. 1085 at 19. He received a new prescription to help control his blood pressure, and by October 2020, his blood pressure was down to 122/80. *Id.* at 10. Between August and October 2020, Mata's weight dropped from 196.4 lbs. to 191.7. With a Body Mass Index (BMI) of 31.0, Mata is at the low end of the obese category and, if he were to lose an additional 7 lbs., he would no longer be considered obese. Mata, with the help of the BOP medical staff, is managing his chronic conditions.

In September 2020, to establish a "baseline associated to hypertension," Mata had a chest x-ray which showed a "mildly elevated left diaphragm without radiographic evidence for an

acute cardiopulmonary process." *Id.* at 19, 57. A follow-up exam revealed that Mata was asymptomatic and experienced no respiratory issues due to this new finding. *Id.* at 8. He denied feeling any shortness of breath, chest pains, or cough. *Id.* at 12. The prison exam included a flow meter test that showed respiratory flow readings in the normal range, even with "good effort." *Id.* A finding of a "mild" condition for which Mata has no symptoms does not provide compelling and extraordinary reasons to justify release. *See United States v. Williams,* 2020 WL 4756743 (E.D. Pa. Aug. 17, 2020) (mild asthma and obesity with a BMI of 31.5 are not extraordinary circumstances). Mata's 20-year history of smoking is of concern. But here too, Mata is asymptomatic. He has not complained of any respiratory issues relating to his smoking history and presumably he has not smoked since entering the prison system in 2016.

Mata contends that the current and serious outbreak of coronavirus at FCI Danbury warrants a sentence reduction. As with the rest of the country, in January 2021, when Mata filed his renewed motion, FCI Danbury may have been experiencing a surge in coronavirus cases. But currently, FCI Danbury, with a prison population of 653 inmates, has one confirmed active case among inmates and one confirmed active case among staff. *https://www.bop.gov/coronavirus/* (March 4, 2021). In addition, 76 inmates have received two doses of the COVID-19 vaccine and 181 inmates have recovered from coronavirus. *Id.* As of now, FCI Danbury appears to be controlling the spread of the virus at the prison.

As detailed above, the BOP appears to be managing Mata's medical condition. Mata's medical conditions have not substantially diminished his "ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G § 1B1.13(ii). Thus, Mata has not carried his burden to demonstrate extraordinary or compelling reasons justifying his compassionate release.

Even if Mata had provided an extraordinary or compelling reason justifying release, his release would not be "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). To warrant compassionate release, Mata must show that he is not a danger and that the § 3553(a) factors support his release. Mata pleaded guilty to a serious drug offense: Conspiracy to Distribute and Possess with Intent to Distribute Heroin. His relevant conduct involved the distribution of between three and 10 kilograms of heroin. PSR at ¶ 18. And this was not Mata's first drug conviction. In a heartfelt letter to the Court, Mata acknowledges that after being released from prison following his earlier conviction, he "didn't make the full commitment [he] should have . . . and turned to selling drugs once again." With his history of recidivism and having served barely half of his sentence,[2] Mata remains a danger to the safety of the community. Mata's excellent compliance in prison and his avid participation in the prison's educational programming are to be applauded; however, Mata's release is not warranted under the § 3553(a) factors.

Mata's Motion for Reduced Sentence (ECF No. 1082) is DENIED.

IT IS SO ORDERED.

Dated the 5th of March 2021.

_____
Robert E. Jones
Senior United States District Judge

---

[2] Mata's projected release date is July 7, 2025.

6  Order